**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,            )<br>                                                        )<br>            Plaintiff,                        )<br>                                                        )<br>    v.                                              )<br>                                                        )<br>Kenderick Begay,                        )<br>                                                        )<br>            Defendant/Movant.     )<br>_____) | CV 12-08237-PCT-DGC (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On November 28, 2012, Movant Kenderick Begay, who is confined in the United States Penitentiary in Pollock, Louisiana, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter "§2255 motion"), a Memorandum in Support of the Motion, and a Motion to Appoint Counsel.[1] (CV 12-8237 ("CV") Docs. 1-3; CR 06-0626 ("CR") Docs. 111-113.) Plaintiff United States of America (the "Government") filed its Response on March 15, 2013, and Movant filed his reply on April 17, 2013. (CV Docs. 6, 7.)

**BACKGROUND**

**A. Statement of Facts - Trial.[2]**

---

[1] The motions and memorandum were all filed by attorney Dan Drake, on Movant's behalf. On January 22, 2013, the Court appointed Mr. Drake to represent Movant. (CV Doc. 5.)

[2] The statement of facts are derived from the 9th Circuit *en banc* Opinion, affirming Movant's conviction on appeal, unless otherwise noted. See, United States v. Begay, 673 F.3d 1038 (9th Cir. 2011), cert. denied, 132 S. Ct. 754, 181 L. Ed. 2d 508 (2011). (CR Doc.

In the early morning hours of March 28, 2002, Movant left a party in Greasewood, Arizona driving his truck, with passengers Loren Clark, Jessica Lee, Emmanley Begay (no relation to Movant), and Movant's sister Mecheryl Begay.   Around 2:00 a.m., Movant drove passed the victims, J.T.[3] and O.C., driving in the opposite direction. Movant flashed his truck lights at their vehicle, and both vehicles pulled off of the highway and parked on a dirt side road.  Movant got out of his truck and stood for a minute by the driver-side door of J.T. and O.C.'s vehicle.  He then walked back to his truck, retrieved a .30 caliber rifle, walked back to the passenger side of the victim's vehicle and fired eight or nine shots into the vehicle. Movant walked back to his vehicle and placed the gun under the back seat. As Movant walked back to his truck, Mecheryl  began screaming and making horrible cries, asking him "What did you do?" or "Why did you do that?" Movant told his sister to be quiet.  Clark was outside Movant's vehicle, having exited to relieve himself, and asked Movant why he had shot the victims.  Movant did not respond.  Movant, Clark and Mecheryl drove away, leaving Lee behind.  Prior to the shooting, she was in the rear of Movant's truck in a comatose state having consumed too much alcohol.  The gunshots aroused her, at which point she exited the vehicle to vomit. As she walked away from the scene, Lee observed O.C. attempting to hold J.T. upright and that J.T. had blood on his shirt.

O.C. drove to the home of Loren Clark's mother to seek help. By that time, J.T. was already dead.  O.C. was thereafter transported to a local hospital before being transferred to a hospital in New Mexico.  O.C. died from her wounds three days later.

The  FBI and Navajo investigators began investigating the murders but initially failed to make any significant progress.  Witnesses interviewed denied being out on the night of the murder, and Movant told investigators that he was with his girlfriend the entire

---

110.)

[3]Because the victims were minors, they are referred to using only their initials. See 18 U.S.C. § 3509(d).

- 2 -

1 night. Investigators located the crime scene two weeks after the murders and located glass
2 and six .30 caliber shell casings on the ground.

3 Six months later, in the Fall of 2002, Lee contacted the FBI about the murders, and
4 told them, and later testified at trial, that she had been at a party that night with Movant,
5 Mecheryl, Clark, and Emmanley Begay. She admitted to drinking and that her memory had
6 been impaired, but that she did remember leaving the party with the group. Lee stated she
7 had passed out in the vehicle, but awoke upon hearing gunshots. She saw the victims after
8 they had been shot. Lee testified that a few days after the murders when she asked Movant
9 what she should tell the police about the murders, Movant told her to blame it on two other
10 men. Lee and Movant never spoke again.

11 The next break in the investigation came four years after the shootings, in May
12 2006, when the FBI re-contacted Clark. Lee and Clark were the only percipient witnesses
13 to testify at trial. Although Lee only witnessed the shooting's aftermath, Clark was the sole
14 witness to testify to the events leading up to the shooting itself. Clark testified at trial that
15 he had attended a party the night of the shootings with Movant and other friends. Clark,
16 Movant and the friends left the party and got into a truck driven by Movant. Clark recalled
17 Movant pulling his vehicle off the road, at which time, Clark exited the vehicle to relieve
18 himself. He stated that he observed Movant from a distance, appearing simply as "a black
19 figure" in the night, walk initially to the victims' car, stand by the car for a minute or two,
20 then walk back to his truck and retrieve an object from the driver's side, and then walk
21 back to the victims' car. He saw Movant lift the object he had retrieved from the truck up
22 to his shoulder and then heard gunshots and saw sparks. Clark recognized the gunshots
23 coming from a rifle that Movant had used on previous occasions when he and Clark had
24 gone shooting together.

25 When the gunfire ceased, Clark asked Movant why he shot the victims, but Movant
26 did not respond. Movant simply told Clark to get back into the truck. Later that night
27 when Movant dropped Clark off at his house, Movant told Clark to keep quiet. The next
28

1  morning, Movant told Clark not to say anything to the FBI, and to "watch himself."
2  Movant also told Clark to "watch his back" several times after the shootings.

3       Movant proceeded to trial and, on June 27, 2006, was convicted of two counts of
4  First-Degree Murder, and two counts of Using, Brandishing, or Discharging a Firearm in
5  Relation to a Crime of Violence.  (CR Doc. 66.)  Movant was sentenced to life
6  imprisonment on the murder counts, to be followed by consecutive sentences of 120-
7  months and 300-months, for a total of 35-years for the firearms convictions. (CR Doc. 70.)

8      **B. Statement of Facts - Appeal**.

9       Movant appealed his conviction and sentence.  (CR Doc 71.)  A three-judge panel
10 reversed the murder convictions on grounds of insufficient evidence, affirmed the firearms
11 convictions, and found that the trial court did not err in admitting at trial evidence of
12 Movant's intimidation of witnesses Clark and Lee.  United States v. Begay, 567 F.3d 540,
13 550 (9th Cir. 2009), cert. denied, 132 S. Ct. 754 (2011).  The case was reheard *en banc,* and
14 the panel affirmed Movant's convictions.  United States v. Begay, 673 F.3d 1038 (9th Cir.
15 2011).  The panel reversed the 3-judge panel's finding that there was insufficient evidence
16 presented at trial of premeditation, and found without merit Movant's claims that (1) the
17 district court erred when it refused to instruct the jury on a lesser included offense of
18 voluntary manslaughter; (2) the evidence that Movant intimidated Clark and Lee was
19 inadmissible under Federal Rules of Evidence 403 and 404(b); and (3) the prosecutor
20 engaged in misconduct by misstating the elements of premeditation during closing
21 argument. Id.

22     **C. Motion under 28 U.S.C. §2255.**

23      Movant argues in his §2255 motion that his trial counsel was ineffective in violation
24 of his Sixth Amendment right to effective assistance of counsel.  Specifically, Movant
25 claimed that his trial counsel was ineffective because (1) counsel failed to prepare for
26 defense theory that another person confessed to and was responsible for the murders; (2)
27 counsel failed to prepare for effective presentation of prior inconsistent statements in which
28 percipient witnesses failed to describe the shooting scene or Movant's role in the shooting

- 4 -

when asked about those facts; (3) counsel failed to impeach Loren Clark with Clark's knowledge of a cash reward; (4) counsel failed to object to the introduction of evidence of Movant's bad character; (5) counsel conceded there was no evidence of provocation to support a jury instruction on the lesser-included offense of manslaughter; (6) counsel failed to object to the prosecutions misstatement of the law of premeditation during closing argument; (7) counsel failed to investigate an alternate theory of events; (8) counsel failed to object to testimony of the pathologist regarding his review of medical interventions or therapy prior to the death on one of the victims; (9) counsel failed to investigate and present evidence that defendant did not have access to the weapon used in the murder; (10) counsel failed to retain or present forensic witnesses to challenge the prosecution's forensic evidence; and (11) counsel failed to prepare for, investigate, or effectively cross-examine Larry Begay who testified that he heard Movant say he had killed some people and gotten away with it. (CV Doc. 2 at 3-12.)

**DISCUSSION**

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88. There is a strong presumption that a counsel's conduct falls within the wide range of reasonable assistance. See id. at 689-90. The burden is on the defendant to overcome this presumption. Michel v. Louisiana, 350 U.S. 91, 101 (1955). The strategic choices a counsel makes after thoroughly investigating the law and the facts of the case are unlikely to withstand a challenge. Strickland, 466 U.S. at 690-91. The Ninth Circuit has held that counsel must conduct a "reasonable investigation" in order to make informed decisions about how to best represent the client, and must make "reasonable decisions" about what particular investigation is unnecessary. Hendricks v. Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995)

1  (citations omitted).  Without an identification of what benefit additional investigation
2  would reveal, a defendant cannot meet the prejudice prong of the Strickland test.  Id., 70
3  F.3d at 1042 (citing James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

4  The Court is required to conduct a hearing on the allegations in a 2255 motion
5  "unless the motion and the files and records of the case conclusively show that the prisoner
6  is entitled to no relief."  28 U.S.C. §2255.  The court may deny a hearing if the movant's
7  allegations, viewed against the record, fail to state a claim for relief or "are so palpably
8  incredible or patently frivolous as to warrant summary dismissal."  United States v. Mejia-
9  Mesa, 153 F.3d 925, 931 (9th Cir. 1998) (citation omitted).  "Mere conclusory allegations
10 do not warrant an evidentiary hearing."  Shah v. U.S., 878 F.2d 1156, 1161 (9th Cir. 1989).

11 **(1)     Failure to Investigate Alternate Shooter Theory.**

12 Movant alleges that defense counsel was ineffective in failing to properly investigate
13 an alternative shooter theory.  Movant alleges that his trial counsel failed to present
14 evidence that Albert Benny Lee Jr. ("Lee Jr.") confessed to the crimes.  In his opening
15 statement, Movant's trial counsel told the jury that it was going to hear that "a couple of
16 other people, yes, Mr. Alfred Benny Lee, Jr. was responsible for this murder."  (CV Doc.
17 2 at 3; CR Doc. 91, at 24-25.)  Trial counsel attempted to bring in Lee Jr.'s statements
18 through agent Jones, who was aware of the statement Lee Jr. allegedly made to a Navajo
19 Nation police officer, but the Government's hearsay objection was sustained.  (CR Doc.
20 91, at 107-110.)  Trial counsel also attempted to introduce Lee Jr.'s alleged confession
21 through witness Jessica Lee, by asking her if she was aware of the confession, but again,
22 the Government's hearsay objection was sustained.  (CR Doc. 93, at 56-57.)  The trial court
23 instructed the jury at the beginning and end of the trial that statements or questions of
24 counsel are not evidence.  (CR Doc. 91, at 6; CR Doc. 95, at 63.)  No evidence of Lee Jr.'s
25 statement was ultimately presented at trial.  (CV Doc. 2, at 4.)  Movant argues that trial
26 counsel failed to adequately prepare to admit the evidence of Lee Jr.'s statements, and

should have submitted a pretrial motion asserting the admissibility of the statement under Fed. R. Evid. 804(b)(3). (Id.)

Hearsay is an out of court statement that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Out of court statements, offered to prove the truth of the matter asserted cannot be introduced in a case without an exception. Rule 804 allows certain hearsay statements to be introduced when the declarant is unavailable. Fed. R. Evid. 804. A statement that is against the interest of an individual may be admitted at trial if the witness is unavailable if it would subject the declarant to criminal liability and a reasonable person would not have made that statement unless it were true. United States v. Monaco, 735 F.2d 1173, 1176 (9th Cir. 1984). The burden is on the party introducing the statement to prove the declarant is unavailable. See United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000). In this case, Movant fails to provide any factual support to show that Lee Jr. was unavailable for this rule to be applicable.

In fact, it is the Government, in its Response to Movant's §2255 motion that submits documents relating to Lee Jr.'s confession. (CV Docs. 6-1, 6-2, 6-3.) Although in his Reply, Movant objects to the court considering these documents because they are not part of the trial record, the documents nonetheless do nothing to establish Lee Jr.'s availability at trial. Without providing some factual support to show that Lee Jr. was unavailable, and thus make the hearsay statements admissible, or that Lee Jr. was available to testify and should have been called as a witness, Movant cannot show that his counsel was deficient for failing to successfully introduce evidence of Lee Jr.'s alleged confession. Therefore Movant does not show counsel's representation fell below an objective standard of reasonableness.

However, even if Movant showed his trial counsel's representation fell below an objective standard of reasonableness and meets the first prong of Strickland, he must also show that but for these unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. The government presented two

1  witnesses at trial who were present at the time of the murder and placed Movant at the
2  scene; witness Clark observed Movant shoot the victims; both witnesses testified that
3  Movant made inculpatory statements to them; and witness Larry Begay testified that he
4  heard Movant say that he had killed some people and gotten away with it. The jury reached
5  its unanimous verdict only after approximately 4-hours of deliberation. (CR Docs. 95, at
6  98-101; 97, at 2.) According to the documents submitted by the Government, Lee Jr. was
7  highly intoxicated when he made the statement, and subsequently denied it. (CV Doc. 6-3.)
8  He also clarified that the statement he had made to Navajo Police was something to the
9  effect of, "You're always harassing me; you're always trying to convict me of something;
10 so why don't you just take me to jail for killing those kids?" (Id., at 2.)  The Navajo
11 Officer who heard Lee Jr.'s original statement was also later placed on administrative leave
12 because of a public intoxication arrest. (CV Doc. 6-2, at 7.) Finally, witness Lee testified
13 that, although she was better friends with her uncle, Lee Jr. than Movant, Lee Jr. was not
14 present at the scene the night of the shooting. (CR Doc. 93, at 67.) Thus, even if this
15 evidence was introduced, Movant does not demonstrate a reasonable probability that the
16 result of his trial would have been different.

17 **(2)    Failure to Seek the Introduction of Prior Inconsistent Statements of Jessica Lee**
18 **        and Loren Clark.**

19    Movant next argues that counsel was ineffective in failing to seek the admission of
20 extrinsic evidence of the prior inconsistent statements of Jessica Lee and Loren Clark.
21 During trial, both witnesses admitted that they did initially lie to investigators about their
22 knowledge of what had occurred the night of the murders. (CR Doc. 93 at 15, 48-50.) Any
23 attempt by Movant's counsel to introduce again, through other witnesses, Lee and Clark's
24 prior inconsistent statements could provide a further opportunity for the prosecution to
25 highlight the statements and threats made by Movant to the witnesses.

26    Attempts to avoid negative character testimony in a murder trial could be sound
27 trial strategy.  Trial counsel's approach to impeachment decision are "often viewed as
28 tactical decisions, and such decisions do not constitute deficient conduct simply because

- 8 -

there are better options." <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1113 (9th Cir. 2006).  Here, the jury was already aware of the witnesses' prior inconsistent statements and any additional questioning about the inconsistencies would also have been cumulative.  Thus, counsel was not ineffective by not seeking admission of extrinsic evidence of Lee and Clark's prior inconsistent statements.

**(3)     Failure to impeach Loren Clark with his knowledge of a reward.**

Movant's next argument – that defense counsel failed to impeach Loren Clark with his knowledge of a reward – is also unavailing.  Counsel provides no evidence to support the contention that Clark was even aware that a reward existed.  Clark testified that he had moved to New Mexico in May, 2003 and continued to live there at the time of the trial. (CR. Doc. 91 at 117.)  Movant merely speculates that Clark was aware of the reward but provides no factual support to sustain such a claim.  In addition, the FBI initiated contact with Clark, not the other way around. (<u>Id.</u>, at 144.)

Furthermore, Clark testified that the reason he was not forthcoming early on about his knowledge of the murders was his fear of Movant.  Cross-examining Clark about his potential knowledge of the reward could further highlight this fact, particularly if Clark denied knowledge of the reward.   Movant does not establish that his trial counsel was ineffective by failing to impeach Loren Clark with his knowledge of the reward, and in any event, does not demonstrate that there is a reasonable probability that if he had, that the result of trial would have been different.

**(4)     Failure to Object to Testimony that Witnesses Were Afraid of Defendant.**

Movant alleges that his trial counsel was ineffective in failing to object to the testimony of Clark and Lee that they were afraid of Movant.  Clark specifically stated that immediately after the shooting, Movant had told him to keep quiet and not to say anything, and that he was afraid of Movant.  (CR Doc. 93 at 10,15.)  Movant also approached Clark at his home and told him not to say anything and "to watch himself" which Clark took as a threat. (<u>Id.</u>, at 12.)  Clark testified that he did not initially tell the FBI about Movant's involvement in the murder because he didn't want anything to happen to him or his family.

1  (Id., at 26.) Lee did not testify that Movant threatened her or that she was afraid of him, but
2  testified that Movant told her not to talk about what happened, and to tell the FBI that Ervin
3  Begay and Alfred Bennie Jr., and Halbert Yazzie were responsible for the murders. (Id.,
4  at 43-45.) The evidence was relevant because it explains Clark and Lee's inconsistent
5  statements. Even if counsel's failure to object constituted deficient performance, Movant
6  cannot meet the second prong of Strickland because, on appeal, the Ninth Circuit
7  considered this issue and found that the admission of this evidence was not error.[4] Begay,
8  673 F.3d at 1046. The Ninth Circuit held that evidence of Movant's threats was properly
9  admitted because it was admissible to show Movant's consciousness of guilt. Id. Further,
10 the court held that the probative value of the evidence outweighed any prejudice because
11 it explained why the witnesses waited so long before coming forward with the information.
12 Id.

### (5) Counsel Erred in Conceding There Was Insufficient Evidence to Support Manslaughter Instruction.

Movant next alleges that his trial counsel erred by conceding that there was no evidence of provocation to support a manslaughter instruction. Movant argues that his trial attorney should have requested that the instruction be given. Movant also argues that it was the Government's burden to establish a motive or prove that the murder was not committed in a heat of passion or as a result of a sudden quarrel. (CV Doc. 2 at 9.) On appeal however, the Ninth Circuit was clear on this issue. "[A] murder defendant is not automatically entitled to a voluntary manslaughter instruction. The defendant must produce evidence 'that the defendant was acting out of passion rather than malice' before the burden shifts to the government to 'prove beyond a reasonable doubt the *absence* of sudden quarrel or heat of passion.'" Begay, 673 F.3d at 1045 (emphasis in original) (citation omitted). The Ninth Circuit found that Movant failed to meet his burden of

---

[4] Furthermore, "[t]he law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion." Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972).

- 10 -

production. Id. Movant concedes in his motion that there was no evidence introduced at trial regarding Movant's demeanor, or what interaction took place between Movant and the victims before the victims were shot. (CV Doc. 7 at 7.) There was simply no evidence presented to support the conclusion that Movant was acting out of passion rather than malice. The Ninth Circuit found, to the contrary, that the jury could have reasonably concluded that Movant was acting with a cool mind. Begay, 673 F.3d at 1045.

**(6)     Failure to Object to Prosecutor's Misstatement in Closing Argument.**

Movant alleges that his trial counsel was ineffective in failing to object to the prosecutor's misstatement of the law in closing argument. During closing argument the prosecutor stated, "[H]e knew exactly what he was doing. He intended to kill the occupants of the vehicle. That's premeditation. He intended it. He was conscious of it. That's first degree murder." Begay, 673 F.3d at 1046. The jury instruction on premeditation provides as follows:

> Premeditation means with planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered the killing.

Begay, 673 F.3d at 1042-43.

The prosecutor's statement was an incorrect statement of the law because intent does not constitute premeditation. As the Ninth Circuit noted on appeal, however, the prosecutor correctly stated the law shortly before the misstatement. Begay, 673 F.3d at 1042-43. In addition, the court properly instructed the jury on the law of premeditation and the court noted that an instruction carries more weight than a closing argument. Id. The Ninth Circuit concluded that "[t]he misstatement did not prejudice [Movant]." Id. Even if Movant's failure to object constitutes ineffective assistance of counsel, the Ninth Circuit found no prejudice.

**(7)     Failure to Investigate Alternate Theory of Drug Deal Gone Bad.**

Movant claims that his trial counsel was ineffective for failing to investigate an alternative theory of a drug deal gone bad to implicate another person in the shooting and

- 11 -

exculpate Movant. Movant's trial counsel sought unsuccessfully to elicit testimony on cross-examination of agent Jones during trial, of a "drug deal gone bad," and that "[c]ounsel was unprepared to offer anything other than remote hearsay regarding this theory, and was unsuccessful in presenting the jury with any evidence on the point." (CV Doc. 7, at 9.) Specifically, Movant's trial counsel questioned agent Jones about an anonymous phone call received by a dispatcher with the Dilkon police department that "this was a drug deal gone bad." (CR Doc. 91, at 95-97.) The Court sustained the Government's hearsay objection. (Id., at 101.) Movant rests his entire argument on the possibility of this alternate theory, and provides no factual support for the claim. Movant concedes, "[w]hat trial counsel was referring to is unclear. He could have been exploring a motive for another, perhaps Alfred Benny Lee, Junior, to commit the crime. ..." (CV Doc. 7, at 9.) Movant's claim here is simply too speculative to find ineffective assistance of counsel.

**(8)     Failure to Preclude Testimony of Pathologist.**

Movant alleges that trial counsel was ineffective because he failed to object to the admission of testimony of pathologist, Dr. Czarnecki, concerning his observation of evidence of medical intervention on the body of one of the victims, "including many facts jurors might find repugnant and prejudicial to [Movant]." (CV Doc. 2, at 11.) Movant alleges that counsel should have taken steps to mitigate or limit damage from the unfairly prejudicial testimony. Movant's argument that jurors would have found the testimony repugnant, so much so that Movant would be prejudiced is speculative. Furthermore the testimony was relevant because the pathologist, in determining the cause of the victim's death, needed to identify the injuries found on the victim and differentiate between those caused by the shooting, and those caused by medical intervention. The probative value of the evidence outweighed any prejudicial effect. Even if the court had precluded this testimony, there is no reasonable probability that the outcome of Movant's trial would have been different.

**(9)     Failure to Investigate and Present Evidence that Defendant Did Not Have Access to the Weapon Used in the Murder.**

Here, Movant claims that "[h]ad trial counsel conducted adequate investigation he would have been able to present the jury with admissible evidence tending to suggest that [Movant] did not physically possess a semi-automatic rifle firing the sort of ammunition believed to have been used in this case: .30 caliber bullets fired from 7.62 X 39 ammunition." (CV Doc. 2, at 11.)  Movant offers no basis for this claim.  He states that trial counsel had cross-examined Clark in an effort to establish that the firearm had been pawned prior to the shooting, and speculates that "[p]resumably, he had some basis for this line of questioning, even naming the shop where guns were pawned, but bungled the examination and failed to elicit any proof."  (Id.)  Movant additionally argues that the Government had no evidence that Movant owned or possessed the murder weapon, and that creates a reasonable inference exists that no such evidence exists.  Movant's claim is based upon pure speculation, and does not support a the allegation that Movant's counsel was ineffective in this regard.

**(10)   Failure to Prepare Adequately to Challenge the Forensic Evidence in the Case.**

Movant argues that his trial counsel was ineffective because he "made no effort to challenge the prosecution's forensic witnesses, cross-examine about fingerprints or DNA on the empty shell casing found by SA Jones, or elicit information about other forensic evidence that might have been produced to establish that [Movant] was not the alleged shooter, or did or did not use his gun in the shootings."  (CV Doc. 2, at 12.)  Again, however, Movant provides no factual support for his claim.  Without a sufficient demonstration of what evidence could have been introduced or refuted, even if Movant could establish that his counsel's inaction constituted ineffective assistance of counsel, Movant cannot meet the second prong of the Strickland test and show but for his trial counsel's failure to object the outcome of the case would have been different.

**(11)   Failure to Effectively Cross Examine Larry Begay.**

Larry Begay testified at trial to a statement made by Movant to the effect that he had killed some people and gotten away with it.  (CV Doc. 2, at 12.)  Movant alleges that trial counsel was ineffective because Larry Begay was not effectively cross examined, because

there "were sources of bias against and prejudice toward Larry Begay's family and [Movant]'s family" but that "counsel made only an unsuccessful reference to this animosity during cross-examination." (Id.)  Movant produces no evidence in support of his claim.

Movant further argues that because the statement of Larry Begay was made in the presence of others, an investigation "might have produced" witnesses who heard Movant make the statement to Larry Begay.  (CV 2, at 12.)  Movant claims that "none of these witnesses were called by the prosecution, suggesting their testimony would not support Larry Begay's or be helpful to the prosecution. Further investigation and preparation might have produced these witnesses at trial." (Id.) Movant's claim in this regard is clearly speculative.  There is no evidence that the prosecution had sought, or received any information from these witnesses.  Furthermore, if they had, there could be many reasons why the prosecution would not call a witness that corroborates another witnesses' observation, including avoiding the presentation of cumulative evidence, or presenting a weak witness. In addition, if any of the witnesses were interviewed and contradicted Larry Begay, the prosecution would have had to turn over that information pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963).   Movant fails here to establish ineffective assistance of trial counsel.

## CONCLUSION

The Court declines to grant Movant a hearing because the files and records of the case conclusively show that Movant is entitled to no relief.  Movant has failed to satisfy both prongs of the Strickland standard with respect to any of the claims asserted in his §2255 motion.    This Court will recommend that Movant's §2255 motion be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1; CR Doc. 111) be **DENIED and DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 16th day of August, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge