**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenderick Begay, | No. CV-12-08237-PCT-DGC |
| Petitioner, | **ORDER** |
| v. | |
| USA, | |
| Respondent. | |

The government has filed a motion for reconsideration (Doc. 95) of the Court's order granting Petitioner Kenderick Begay's motion to vacate brought pursuant to 28 U.S.C. § 2255 (Doc. 91). The Court will deny the motion.[1]

**I.     Legal Standard.**

Motions for reconsideration are disfavored and should be granted only in rare circumstances. *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 938 (D. Ariz. 2003). A motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LR Civ 7.2(g)(1); *see Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Mere disagreement with an order is an insufficient basis for reconsideration. *See Ross v. Arpaio*, No. CV-05-4177-PHX-MHM, 2008 WL

---

[1] As the Court noted in its text order dated April 25, 2015 (Doc. 96), many of the arguments raised by the government were not raised in its objections to the Report and Recommendation ("R&R"). Doc. 84. Although the Court could choose to deny those arguments for that reason alone, it recognizes the importance of a new trial order and will address all issues raised by the government.

1776502, at *2 (D. Ariz. 2008). Nor should reconsideration be used to ask the Court to rethink its analysis. *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998); *see N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

## II.   Analysis.

The government argues the Court should grant its motion for three reasons: (1) the Court committed manifest error in concluding that Begay's trial counsel had an obligation to interview Dorasita Begay and Alfred Bennie Lee, Jr., (2) the Court committed manifest error by concluding that Lee's confession would have been admissible, and (3) the Court erred in finding that trial counsel was ineffective for failing to introduce the pawn shop records.

### A.   Trial Counsel's Performance.

The government first argues that the Court should not have concluded that trial counsel had an obligation to interview Dorasita and Lee because both witnesses had already been interviewed and trial counsel "had familiarized himself with the content of those interviews." Doc. 95 at 4. In support of its position, the government relies on four Ninth Circuit cases, none of which were cited in its objections to the R&R. Doc. 84. Regardless, the Court finds the government's argument meritless.[2]

In *Bragg v. Galaza*, 242 F.3d 1082, 1086 (9th Cir. 2001), the defendant was convicted of second degree murder of a woman who was shot in her car in what appeared

---

[2] The government claims it did not raise this argument in its objections because the R&R did not address the issue and the Court went beyond the scope of the R&R in its order. Doc. 100 at 2. It asserts "[t]here was simply no reason for [it] to analyze *Wiggins*, *Smith* [sic], or the scope of the duty to investigate." *Id.* at 2-3. But the R&R specifically addressed Begay's claim that "trial counsel rendered ineffective assistance by *failing to investigate* an alternate shooter . . . theory of defense." Doc. 77 at 7 (emphasis added). In fact, both of Begay's claims of error alleged a failure to investigate. *Id.* at 14. The R&R set out a detailed account of counsel's investigation followed by relevant case law from the Ninth Circuit. *Id.* It specifically cited *Avila v. Galaza* for the proposition that a "lawyer who fails to adequately investigate, and to introduce into evidence, [evidence] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Id.* (quoting 297 F.3d 911, 919 (9th Cir. 2002)). The R&R found that trial counsel's tactical decisions fell below the objective standard of reasonableness *because* he failed to investigate.

- 2 -

to be a drive-by shooting. Witnesses at trial testified that the defendant had been driving with another passenger, Norwood, who was represented by the defendant's counsel in an unrelated case. *Id.* at 1085. Norwood told counsel's investigator that he knew "all about" the defendant's case, but the investigator did not further question him, and counsel eventually withdrew from representing Norwood in the unrelated case. *Id.* at 1086. In finding that counsel had no duty to further question his investigator regarding Norwood's statement, the court noted that the defendant failed to "identify any information that [counsel] had not already gained from other witnesses that he would have gained from interviewing Norwood" and that "[t]here [was] no evidence that investigating Norwood would be akin to investigating 'the most important defense.'" *Id.* at 1088. The court also noted that the case against the defendant was "strong," given that "the passenger in the victim's car identified [the defendant] as the driver; other witnesses identified [the defendant's] car, [the defendant] or both[.]" *Id.* Moreover, the record was not fully developed, as the court was without evidence of counsel's investigation and the reasons he chose not to investigate. *Id.*

In *LaGrand v. Stewart*, 133 F.3d 1253 (9th Cir. 1998), the defendant argued that his counsel was ineffective for "failing to interview and examine all of the witnesses at trial." *Id.* at 1274. The Ninth Circuit disagreed, finding that "[p]rior to the time that trial counsel was appointed to represent [the defendant], all of the eighteen witnesses had been interviewed[,] [t]rial counsel [had] reviewed the transcripts of these interviews[,]" trial counsel had reviewed the investigator's reports, and trial counsel had personally interviewed the only eyewitness in the case. *Id.* The court further noted that "[t]rial counsel put in the equivalent of twenty-seven eight-hour days in trial preparation" and "that trial counsel did not personally interview each witness does not constitute ineffective assistance." *Id.*

In *Eggleston v. United States*, 798 F.2d 374 (9th Cir. 1986), a defendant who pled guilty to fraud argued that counsel "failed to interview governmental witnesses, to obtain discovery materials and information from the government, and to subpoena defense

- 3 -

witnesses." *Id.* at 376.  The court rejected the claim, finding that "[t]he record clearly shows [counsel] was well informed of the facts and circumstances of the case by his discovery methods."  *Id.*  Counsel had the "defendant as a source of information, . . . complete access to all of the witness interviews and statements taken by the government, as well as supporting documents and FBI reports."  *Id.*  The court also noted that the defendant failed to identify what additional information would have been gained from further investigation.  *Id.*  The court found that counsel's advice that the defendant plead guilty was reasonable trial strategy considering the strength of the government's case.  *Id.*

In *United States v. Naghani*, 252 F. App'x 185 (9th Cir. 2007) (unpublished), a defendant convicted of interfering with flight crew members argued that his counsel rendered ineffective assistance for failing to interview a flight attendant "to whom [the defendant] made a threatening remark that served as the basis for his conviction."  *Id.* at 187.  The court rejected the claim, finding that counsel "reviewed the written statements of [the flight attendant] as well as the investigator reports of interviews with [the flight attendant]," and that the defendant failed to "allege that an interview . . . would have revealed any new material facts."  *Id.*

These cases are distinguishable.  None dealt with counsel's failure to investigate the defendant's "most important defense," a key distinction recognized by the court in *Bragg*.  *See* 242 F.3d at 1088 (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)).  Here, trial counsel conducted almost no investigation into Lee's alleged confession even though he recognized that "the heart of our case" was demonstrating Lee was in fact responsible for the murders.  He did not recall speaking with the previously-hired investigator, Reuben Martinez, who interviewed Dorasita, or even attempting to obtain the investigator's reports.  Doc. 91 at 11.  Even though the court appointed another investigator to assist trial counsel, neither the new investigator nor trial counsel interviewed any witnesses, let alone the witness most important to Begay's defense: the man who allegedly confessed to the very crime with which Begay was charged.  *Id.* at 11.  Instead, trial counsel's strategy was to simply try to "grab folks" outside of the courtroom

- 4 -

at another trial.  *Id.*[3]

Unlike the cases cited by the government, this is not a situation where the witness accounts were "otherwise fairly known to defense counsel." *Eggleston*, 798 F.2d at 376. In *Eggleston*, counsel "was well informed of the facts and circumstances of the case by his discovery methods." *Id.*  Here, however, the record is devoid of evidence that trial counsel took any steps to investigate Lee's confession.  Doc. 71-1 at 20, 52.  Counsel in *LaGrand* at least reviewed both the interview transcripts and investigator reports of the eighteen witnesses, and counsel in *Naghani* reviewed both the statement report and the investigator report of the witness.  This is not a case where counsel simply failed to re-interview a witness or dig a little deeper.  Trial counsel deemed it unnecessary to interview any potential witnesses or to even phone investigator Martinez in an attempt to obtain the reports of Dorasita's account of Lee's confession. None of the cases cited by the government undermine the Court's conclusion that trial counsel failed to conduct a reasonable investigation into Begay's most important defense.

**B.**   ***Strickland* Prejudice.**

The government argues that the Court erred in finding that Lee's confession would have been admissible at trial under Federal Rule of Evidence 613 or 804, and thus Begay did not satisfy the prejudice prong of *Strickland*.

In its order, the Court found that if "Lee was available to testify at trial, he could have been asked whether he committed the murders and made the confession to Dorasita." Doc. 91 at 19.  If he denied committing the murders and confessing, "he could have been asked about his confession to Dorasita under Federal Rule of Evidence 613(a)." *Id.*  "Dorasita could have been called to testify about the confession under Rule 613(b), assuming Lee Jr. was afforded an opportunity to explain or deny the statement." *Id.*  The Court also found that if Lee was unavailable due to (1) his failure to appear, (2) his lack of recollection in making the confession, or (3) his invocation of his

---

[3] In fact, trial counsel does not claim he successfully interviewed any witnesses this way.

- 5 -

Fifth Amendment rights, "Dorasita's testimony about the confession would likely be admissible as a statement against interest under Rule 804(b)(3)." *Id.* It also found that the corroborating circumstances required by Rule 804(b)(3)(B) "likely exist in this case" given the detail of Lee Jr.'s confession. *Id.*[4]

### 1. Rule 613.

The government argues that the defense could not have called Dorasita solely for impeachment purposes under Rule 613. It relies on *United States v. Gomez-Gallardo*, 915 F.2d 553 (9th Cir. 1990), a case in which a witness confessed to conspiring with the defendant but recanted the confession before the defendant's trial. Notwithstanding the recantation, the government called the witness at trial with full knowledge that he would deny the defendant's involvement. *Id.* at 554. The government then called three witnesses to impeach the witness's testimony. *Id.* The Ninth Circuit reversed the conviction, noting that "impeachment is not permitted where it is 'employed as a guise for submitting to the jury substantive evidence that is otherwise unavailable.'" *Id.* at 555 (quoting *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir. 1988)).

In contrast, in *United States v. Buffalo*, 358 F.3d 519 (8th Cir. 2004), the defense called a witness who had allegedly confessed to the crime with which the defendant was charged, knowing that he would deny confessing. The district court prohibited the defendant from calling two impeachment witnesses to whom the witness allegedly had confessed. *Id.* at 521. In reversing the conviction, the Eighth Circuit noted that the "vast majority of cases on the issue of impeaching one's own witness with a prior inconsistent statement speak to the government's use of the statements to impeach its witnesses where the statements inculpate the defendant." *Id.* at 525. In such a situation, the "statement's likely prejudicial impact often substantially outweighs its probative value for impeachment purposes because the jury may ignore the judge's limiting instructions and consider the impeachment testimony for substantive purposes." *Id.* (quoting *United*

---

[4] Another scenario, albeit it highly unlikely, was that Lee could have been called by the defense, appeared at trial, and testified to committing the murders.

- 6 -

*States v. Ince*, 21 F.3d 576, 581 (4th Cir. 1994)) (internal quotations omitted). Indeed, "[t]hat risk is multiplied when the statement offered as impeachment testimony contains the defendant's alleged admission of guilt." *Id.* (quoting *Ince*, 21 F.3d at 581). But "[w]hen the defendant seeks to introduce a prior inconsistent statement for impeachment purposes, the dangers identified above are not implicated." *Id.* In other words, "the prejudicial impact of the statement does not endanger the defendant's liberty by risking a conviction based on out-of-court statements that are not subject to confrontation by way of cross-examination." *Id.* The Eighth Circuit found that because the defendant met the foundational requirements of Rule 613(b) by confronting the witness with the inconsistent statements and affording him the opportunity to explain or deny them, the district court should have conducted a Rule 403 inquiry instead of flatly rejecting the extrinsic evidence. *Id.* at 524. The district court abused its discretion by failing to conduct a Rule 403 inquiry and failing to consider Rules 607 and 613(b). *Id.* at 527.

In light of the ruling in *Buffalo*, which the Court finds persuasive, the government does not identify any manifest error. In its earlier order, the Court concluded that the evidence would have been admissible under Rule 613(a) or (b). Doc. 91 at 19. The Court found that extrinsic evidence of the confession would have been admissible "assuming Lee Jr. was afforded an opportunity to explain or deny the statement." *Id.* Thus, assuming Begay had laid the requisite foundation under the rule, the Court would have then considered Rule 607, which provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Rather than flatly rejecting the evidence, the Court then would have conducted a Rule 403 inquiry to determine whether the probative value of the evidence was substantially outweighed by any unfair prejudice to the government. Because the government would have had a full opportunity to cross-examine Lee and Dorasita and to argue to the jury that Lee's confession is unreliable, the risk of unfair prejudice would have been minimal and the Court likely would have overruled any Rule 403 objection.

The Court's review of these cases has identified an issue not raised by the

- 7 -

1    government – Dorasita's testimony would be admissible under Rule 613 only for the
2    limited purpose of impeachment and not as substantive evidence that Lee committed the
3    murders.  *See United States v. Crouch*, 731 F.2d 621, 623 (9th Cir. 1984) ("Hearsay
4    statements may be admissible to impeach a declarant who subsequently testifies at trial,
5    but are not admissible as substantive evidence[.]").  A limiting instruction to the jury
6    would be necessary.  The Court will return to this fact in the discussion below.

        **2.**      **Rule 804.**

8    With respect to the Court's Rule 804 analysis, the government argues the Court
9    erred in finding the confession admissible because (1) Lee was available to testify,
10   (2) Judge Martone already ruled the confession inadmissible in the trial of *United States*
11   *v. Mecheryl Begay*, and (3) the confession was unreliable.  The Court does not agree.

12   The government argues that Lee attempted to testify during the non-murder trial of
13   Mecheryl Begay, but "was simply unsure of where or when to report[.]"  Doc. 95 at 9.
14   Thus, the government claims, "the record suggests that Lee was available to testify" and
15   would also be available in this case.  *Id.*  But the document cited by the government
16   shows only that Lee was served in Greasewood, Arizona with a subpoena for the
17   Mecheryl Begay trial (on the third or fourth attempt), failed to call the attorney identified
18   on the subpoena as directed by the serving officer, hitchhiked to Phoenix with his uncle
19   for a medical appointment on a date he could not recall, and did not bring the subpoena
20   with him.  *See* CT-06-0453-PHX-FJM.  This hardly shows that Lee made an earnest
21   effort to comply with the subpoena or would have appeared at the trial in this case.  More
22   importantly, the government presents no reason to conclude that Lee knew he would be
23   questioned in the Mecheryl Begay trial about his alleged confession.

24   The Court continues to believe that a good possibility exists that Lee would not
25   have appeared for trial in this case or would have invoked his Fifth Amendment rights if
26   he knew he was going to be asked about his confession.  This is particularly true in light
27   of the fact that the Court probably would have been required to appoint counsel for him
28   before he was asked if he murdered the victims in this case.  Either his absence or his

invocation of his Fifth Amendment right to remain silent would render him unavailable for purposes of Rule 804. *See United States v. Gadson*, 763 F.3d 1189, 1200 (9th Cir. 2014) (noting witness was deemed unavailable "due to his invocation of his Fifth Amendment privilege against self-incrimination"). It is also quite possible that Lee would have testified that he does not remember anything about the confession to Dorasita, thereby rendering himself unavailable under Rule 804(a)(3). *See United States v. Jonassen*, 759 F.3d 653, 661 (7th Cir. 2014) (witness unavailable because she testified that she did not remember the subject matter).

In addition, the fact that Judge Martone suggested Lee's confession would be inadmissible does not control the Court's ruling in this case. Judge Martone found Lee's confession to be a statement against penal interest. Doc. 86-4 at 36-38. When he asked what corroborating evidence existed to support the statement, as required by Rule 804(b)(3)(B), the only evidence identified by defense counsel was that Lee said he had used a .30-06 caliber rifle to shoot the victims. Judge Martone found this single piece of evidence to be insufficient corroboration. *Id*. More corroboration was identified in this Court's ruling, including that the young woman victim was not the primary target, that facts in Lee's confession were consistent with his personal situation (a drug deal gone bad, when Lee Jr. was involved in drug sales, and use of a weapon that Lee Jr.'s father might well have obtained in connection with his illicit business), and that the confession was made to a law enforcement officer, while Lee Jr. was in custody, and with no apparent benefit to himself. Doc. 91 at 19-20. The Court continues to believe that these additional facts likely would have provided the corroboration required by Rule 804(b)(3)(B).

The government now claims that new evidence undermines the entirety of the confession. This new evidence is that the bullet found at the crime scene was actually a 7.62x39mm, not a .30-06 bullet. Doc. 95 at 10. Thus, the government asserts, Lee's confession to using a .30-06 rifle to shoot the victims is not reliable. But as the government concedes, both the 7.62x39mm and the .30-06 are .30 caliber bullets and the

evidence is certainly not "new," as the bullet found at the crime scene has been in the government's possession for nearly ten years. Indeed, Special Agent Jones testified at trial that the bullets found at the scene were "7.62 millimeter by 39 shell casings, which are .30 caliber[.]" Case No. 06-626, Doc. 91 at 90. Regardless, given the similarity of the two types of bullets, the Court continues to find that Lee's confession to Dorasita likely contained sufficient corroboration to be admissible under Rule 804(b). Lee's alleged confession was made "under circumstances which provided considerable assurance of their reliability." *Chambers v. Mississippi*, 410 U.S. 284, 300 (1973).[5]

### 3. Conclusion.

"A defendant is prejudiced by counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). For Lee's confession to have a "reasonable probability of affecting the outcome of the trial, there had to be a reasonable probability that a competent lawyer would have introduced evidence of [the confession] in an admissible form." *Cannedy v. Adams*, 706 F.3d 1148, 1163 (9th Cir. 2013).

The Court sees five possible outcomes if trial counsel had sought to present evidence of Lee's confession at trial: (1) Lee would have failed to appear; (2) Lee would have appeared and invoked the Fifth Amendment; (3) Lee would have appeared and testified that he had no memory of confessing; (4) Lee would have appeared and denied confessing; or (5) Lee would have appeared and confirmed that he confessed. In scenarios (1), (2), and (3), which the Court considers most likely, Lee would have been unavailable and Dorasita's testimony about the confession would have been admissible under Rule 804(b)(3). Under scenario (5), the facts of Lee's confession would also be introduced to the jury. Under scenario (4), Lee's confession could be admitted under

---

[5] To the extent that the government challenges other facts surrounding the credibility of the confession, these issues were raised in the government's objections to the R&R and the Court addressed them in its previous order.

- 10 -

Rule 613, but only with a limiting instruction that it is not substantive evidence. Thus, under four of the five possible scenarios, the jury would have received substantive evidence of Lee's confession. The Court finds these odds sufficient to create a "reasonable probability that a competent lawyer would have introduced evidence of the [confession] in an admissible form." *Cannedy*, 706 F.3d at 1163; *see also United States v. Hall*, 165 F.3d 1095, 1113 (7th Cir. 1999) (noting that "states must allow defendants to put reliable third-party confessions before the jury, despite the hearsay rule, when necessary to assist in separating the guilty from the innocent"). The prejudice requirement is satisfied.

### C. Pawn Shop Evidence.

The government asserts that trial counsel's failure to introduce the pawn shop evidence was a strategic decision for which attorneys are afforded "wide latitude" and that his "handling of that evidence constituted a tactical trial decision, not a negligent failure to investigate and present evidence." Doc. 95 at 12. It further asserts that even if the evidence was admitted, "the government would be able to show – through Loren Clark – that Begay was seen firing an SKS after the pawn but before the murder" and may have even confirmed that Begay did, in fact, know how to shoot an SKS rifle and had owned one in the past. *Id.* at 12-13.

This portion of the government's motion merely reasserts arguments presented in its objections to the R&R. Like the objections, much of the government's argument focuses on whether the Court viewed the evidence through the benefit of hindsight, as well as whether the Court should defer to trial counsel's explanation that his decision not to investigate and present the pawn shop evidence was "tactical." No new evidence is presented and the government identifies no manifest error in the Court's decision. Any analysis on this issue would be cumulative, and the Court declines to rethink its previous decision on this issue. *See Rezzonico*, 32 F. Supp. 2d 1112, 1116. Moreover, the Court would grant a new trial on the basis of trial counsel's failure to investigate Lee's confession even if the pawn shop evidence was not at issue.

**IT IS ORDERED** that Respondent's motion for reconsideration (Doc. 95) is **denied**.

Dated this 9th day of June, 2015.

David G. Campbell
United States District Judge